## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CAROLYN DECHAINE,

     Plaintiff,

v.                                No. 1:23-cv-1134 KRS/LF

LIBERTY MUTUAL INSURANCE COMPANY,

     Defendant.

### MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION TO DISMISS

THIS MATTER is before the Court on Defendant's Motion to Dismiss filed December 20, 2023.  (Doc. 3).  Plaintiff filed a response on January 12, 2024, and Defendant filed a reply on February 9, 2024.  (Docs. 12 and 15).  Pursuant to 28 U.S.C. § 636(c), the parties have consented to the undersigned to conduct dispositive proceedings in this matter and to enter a final judgment.  (Docs. 8 and 9).  Having considered the parties' briefing, record of the case, and relevant law, the Court grants the Motion to Dismiss in part.

### I.  **Background**

For the purpose of ruling on Defendants' Motion to Dismiss, the Court assumes that the following facts, taken from Plaintiffs' Complaint, are true.  *See Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016) ("In reviewing a motion to dismiss, [the Court] accept[s] the facts alleged in the complaint as true and view[s] them in the light most favorable to the plaintiff.").  Plaintiff brings claims against Defendant alleging bad faith breach of contract, violation of the Unfair Insurance Practices Act, and violation of the Unfair Trade Practices Act for failure to provide coverage under a homeowners insurance policy.  (Doc. 1-2) at 6-8.  Specifically, Plaintiff alleges that on or about June 13, 2020, she noticed leaking in her home from a rain and

wind storm and contacted Defendant to make a claim under the insurance policy. *Id.* at ¶6. "Over the next several months, Defendant processed Plaintiff's claim and investigated the loss." *Id.* at ¶7. Plaintiff states that Defendant determined that a majority of the damage was the result of faulty installation of the roof by a contractor, and that Defendant's investigation of the damage was incomplete because it did not include a determination of the path the water had taken. *Id.* at ¶7. "Beginning in June 2020, Plaintiff was forced to move out of her home for a period of approximately 9 months while the damage to her home was remediated." *Id.* at ¶8.

After moving back into her home in March 2021, Plaintiff found signs of water damage near the floor of the bathroom on the second floor. She states Defendant agreed to have a contractor, Edelweiss Restoration and Cleaning, examine the area, and Edelweiss found water damage in the exterior wall framing of the bathroom as well as in the second story bedroom. Plaintiff alleges "Defendant assured Plaintiff that remediation of water damage in the second story bathroom, including replacing the tub in the bathroom, would be covered by Plaintiff's home insurance policy." *Id.* at ¶10. Thereafter, in the summer of 2021, a second contractor, Paul Davis Restoration, inspected Plaintiff's home and developed a plan to repair the damage to the upstairs bedroom. *Id.* at ¶11. Plaintiff states that Defendant assured her "that, no matter how long it took for Paul Davis Restoration and the contractor to do the work, Plaintiff's homeowner's policy would provide coverage." *Id.* at ¶12. "Approximately a year after the June 2020 storm," Paul Davis Restoration began work on the second floor of the house and found mold, requiring containment of the second floor of the house. *Id.* at ¶13.

In the summer of 2022, Plaintiff found evidence of water damage on the first floor of her home and contacted Paul Davis Restoration and Defendant about that damage. *Id.* at ¶15.

Plaintiff "set up a conference call with her adjuster at the time and two contractors who were working to repair and remediate Plaintiff's home," and that on that call Defendant approved a plan to open four areas on the first floor and two walls in the upstairs bedroom. *Id.* at ¶19. Plaintiff next claims that Defendant's adjuster represented to Plaintiff that Paul Davis Restoration told Defendant "that there was no such damage," but "Paul Davis Restoration denied have [sic] made any such statement to Defendant." *Id.* at ¶20. "Defendant then ceased speaking with Plaintiff" and "insisted that any future communications with Plaintiff be in writing." *Id.* at ¶21. Plaintiff further alleges that after one of Paul Davis Restoration's representatives spoke with Defendant, "Paul Davis Restoration refused to complete the work it had begun in the summer of 2021." *Id.* at ¶15. Plaintiff subsequently contacted a third remediation company, DeconProGreen, who began more remediation work on October 1, 2022, and Plaintiff again moved out of her house until March 2023. *Id.* at ¶¶16, 22-23.

Plaintiff sought coverage from Defendant for the cost of making alternative living arrangements for the second time, and "Defendant, by letter dated June 23, 2022, this time denied coverage on the basis that too much time had elapsed from the date of loss to the request for alternative housing coverage." *Id.* at ¶17. Plaintiff further states: "By letter dated December 2, 2022, Defendant denied coverage for certain expenses Plaintiff had submitted and indicated that it would not be paying for any further expenses incurred in the course of remediating and repairing the water damage caused by the 2020 storm." *Id.* at ¶26. "Defendant took the position that some of the money it had paid was duplicative of a claim Plaintiff had made in 2019 that Defendant had denied." *Id.* Subsequently, on or about January 13, 2023, Plaintiff alerted Defendant to water damage caused by pipes that were cracked in the process of repairing the

2020 damage.  *Id.* at ¶24.  Defendant opened this as a new claim and denied it by letter dated

January 19, 2023 on the basis that the damage had been caused by seepage which was not

covered by Plaintiff's policy.  *Id.* at ¶¶25, 27.

On October 20, 2023, Plaintiff filed her lawsuit in the First Judicial District Court, and

Defendant removed the case to this Court on December 20, 2023.  (Doc. 1).  Plaintiff brings

three claims against Defendant: (1) "Bad Faith Breach of Contract" for Defendant's failure to

provide coverage for damage caused by the June 2020 storm; (2) Violation of the Unfair

Insurance Practices Act due to Defendant misrepresenting pertinent facts or policy provisions

relating to the coverage at issue and failing to act promptly on Plaintiff's claims; and (3)

Violation of the Unfair Trade Practices Act for failure to provide the quality or quantity of

services Plaintiff paid for when purchasing the policy.  (Doc. 1-1) at 6-8.

In its Motion to Dismiss, Defendant states that it has paid over $150,000 on Plaintiff's

June 13, 2020 claim, and argues that Plaintiff's breach of contract claim is barred by the policy's

time-to-sue provision which bars all actions not brought within one year of the date of loss.

(Doc. 3) at 2-7.  Defendant contends that Plaintiff's remaining claims must also be dismissed

because they are predicated on the alleged breach and because they fail to adequately state a

claim upon which relief can be granted.  *Id.* at 7-10.  Plaintiff responds that Defendant

incorrectly ties the time-to-sue provision to the date of loss instead of the date of the harm caused

to Plaintiff by Defendant's decision to stop paying on the June 2020 claim.  (Doc. 12) at 1.

Plaintiff argues that because Defendant initially provided coverage for the claim, and then

changed course more than two years later, Defendant cannot rely on the one-year time-to-sue

provision.  *Id.* at 2-5.  Plaintiff additionally argues that her bad faith and statutory claims do not

depend on a successful breach of contract claim and Plaintiff has properly pled all of the elements of those claims. *Id.* at 6-9. In its reply, Defendant maintains that the time-to-sue provision in the contract is binding and began to run from the date of the loss, and that Plaintiff's remaining claims fail as a matter of law. (Doc. 15) at 1-7.

## II.   <u>Legal Standard</u>

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which the court can grant relief. "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a complaint does not require detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"A claim is facially plausible when the allegations give rise to a reasonable inference that the defendant is liable." *Mayfield*, 826 F.3d at 1255. The court's consideration, therefore, is limited to determining whether the complaint states a legally sufficient claim upon which the court can grant relief. *See Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The court is not required to accept conclusions of law or the asserted application of law to the alleged facts. *See Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994). Nor is the court required to accept as true legal conclusions that are masquerading as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must, however, view a plaintiff's allegations in the light most favorable to the plaintiff. *Schrock v. Wyeth, Inc.*, 727

F.3d 1273, 1280 (10th Cir. 2013).  Additionally, in ruling on a motion to dismiss, the Court may

consider documents and materials "referenced in the Complaint and central to Plaintiff's claim."

*NCMIC Ins. Co. v. Brown*, 2018 WL 1508550, at *2 (D.N.M. 2018); *see also Pace v. Swerdlow*,

519 F.3d 1067, 1072 (10th Cir. 2008).  The insurance policy is referenced by both parties and

Plaintiff does not dispute its authenticity, so the Court will consider it without converting the

instant motion into a Rule 56 motion for summary judgment.  *See* Fed. R. Civ. P. 12(d).

### III.   <u>Analysis</u>

#### A.  <u>Breach of Contract Claim</u>

Defendant first asserts that Plaintiff's breach of contract claim is prohibited by the time-

to-sue provision in the insurance policy, which states: "No action can be brought unless the

policy provisions have been complied with and the action is started within one year after the date

of loss."  (Doc. 3) at 5.  Plaintiff acknowledges she did not bring her claims within one year of

the date of loss, but she explains that is because Defendant initially agreed to provide coverage

and did not stop providing coverage until more than a year after the date of loss.  (Doc. 12)

at 2-3.

A federal court sitting in diversity jurisdiction is bound to construe and apply the

substantive law of the forum state.  *Leprino Foods Co. v. Factory Mut. Ins. Co.*, 453 F.3d 1281,

1287 (10th Cir. 2006).  New Mexico "courts consistently have held that contractual limitations

on actions, including time-to-sue provisions, will be enforced unless they violate public policy."

*State ex. rel. Udall v. Colonial Penn Ins. Co.*, 812 P.2d 777, 779 (N.M. 1991).  Moreover, "[i]n

New Mexico, provisions in insurance policies which limit the period within which suit may be

brought after damage occurs are valid and enforceable if the time period is reasonable."  *Young*

*v. Seven Bar Flying Serv., Inc.*, 685 P.2d 953, 955 (N.M. 1984). New Mexico courts have long held that one-year time periods are reasonable and, therefore, valid and enforceable. *See id.* (finding that one-year time-to-sue provision barred insured's claim); *Wiseman v. Arrow Freightways, Inc.*, 552 P.2d 1240, 1242 (N.M. Ct. App. 1976) (same); *Turner v. New Brunswick Fire Ins. Co. of New Brunswick, N.J.*, 112 P.2d 511, 513 (N.M. 1941) (same); *Elec. Gin Co. v. Firemen's Fund Ins. Co.*, 39 P.2d 1024, 1024-25 (N.M. 1935) (same). Accordingly, New Mexico courts have routinely upheld time-to-sue provisions that, like the one here, run from the date of loss or damage. *See, e.g., Green v. General Accident Ins. Co. of Am.*, 746 P.2d 152 (N.M. 1987) (upholding 12-month time-to-sue provision in homeowner's policy where triggering event was date of theft of property); *Sanchez v. Kemper Ins. Cos.*, 632 P.2d 343, 345 (N.M. 1981) (upholding one-year time-to-sue provision in individual's insurance policy where triggering event was date of loss to property); *Peoples State Bank v. Ohio Cas. Ins. Co.*, 635 P.2d 306 (N.M. 1981) (holding insurer made prima face showing for summary judgment where insured failed to institute suit within one year from date of loss to property caused by rainstorm, as required by policy); *Wiseman v. Arrow Freightways, Inc.*, 552 P.2d 1240 (N.M. Ct. App. 1976) (upholding time-to-sue provision in livestock transportation policy where triggering event was 12 months after loss to property).

The expressed rationale for enforcing time-to-sue provisions is that a "party who executes and enters into a written contract with another is presumed to know the terms of the agreement, and to have agreed to each of its provisions." *Udall*, 812 P.2d at 780. "Under such circumstances, the important public policy of freedom of contract mandate[s] enforcement of the bargained-for time-to-sue provision." *City of Santa Fe v. Travelers Cas. & Sur. Co.*, 228 P.3d

483, 485 (N.M. 2010).  This is true regardless of whether a party "negotiate[s] actively over the provisions," as "the limitations on the right to sue were part of the agreement and represented an element of the consideration."  *Udall*, 812 P.2d at 781.

Nevertheless, an insurer can waive an otherwise enforceable time-to-sue provision either by express language or conduct.  *Peoples State Bank*, 635 P.2d at 308; *see also Green*, 746 P.2d at 154 (holding an "insurer may be estopped from raising the affirmative defense of a time-to-sue provision").  "Estoppel arises when an individual has been induced by the conduct of another to do, or forbear from doing, something he would or would not have done but for such conduct." *Green*, 746 P.2d at 154.  "The acts and conduct generally held to constitute a waiver of a time-to-sue provision are those acts which would lull the insured into reasonably believing that its claim would be settled without suit or which would render enforcement of a limitations defense unjust, inequitable or unconscionable."  *Id.*

Here, Plaintiff contends that Defendant cannot rely on the insurance contract's one-year time-to-sue provision because Defendant did not stop paying on the June 2020 claim until more than a year after the date of loss.  In a similar case in this district, the court found that the insurer waived the policy's one-year time-to-sue provision by considering and investigating the claim past the time the provision ran.  *See Presbyterian Healthcare Servs. v. Factory Mut. Ins. Co.*, 512 F. Supp. 3d 1169, 1178 (D.N.M. 2021).  The court first explained that under New Mexico law, the contract's time-to-sue provision ran from the date of loss, time not from the date of denial of the claim.  *Id.* at 1176-77 ("The time-to-sue provision in the Policy is specific in requiring legal action to be brought within twelve months 'after inception of the loss,'" and "[i]n the absence of ambiguity, a court must interpret and enforce the clear language of the contract and cannot make

8

a new agreement for the parties.") (quoting *Nearburg v. Yates Petroleum Corp.*, 943 P.2d 560, 569 (N.M. Ct. App. 1997)).  However, the court held that the insurance company waived the time-to-sue provision because it investigated and considered the insured's claim both within the twelve-month period and for several years after it expired, and during this period it "never denied liability, never stated that it would refuse to negotiate or cooperate with [the insured], and never raised the Policy's time-to-sue provision as a limit" to the claim.  *Id.* at 1178.  Accordingly, the insurer "engaged in voluntary conduct by which it relinquished its right to assert the time-to-sue provision as a defense against [the insured]'s lawsuit," and "lulled [the insured] into reasonably believing that it would not have to resort to a lawsuit."  *Id.* at 1179.  Because the time-to-sue provision was waived, the court applied the applicable state law statute of limitations—six years for a breach of contract claim and four years for claims under the New Mexico Insurance Code and the New Mexico Unfair Practices Act.  *Id.* (citing NMSA 1978, § 37-1-3(A)).  The court further explained that the causes of action "accrued when [the insurer] made clear its intention to cease its adjustment activity and close its file."  *Id.* at 1180.

The Court finds the reasoning of *Presbyterian* instructive and similarly finds that the time-to-sue provision here is unambiguous and began to run on June 13, 2020, the date of loss, and not from the date Defendant denied Plaintiff's claim.  Nevertheless, Plaintiff asserts that Defendant is estopped from relying on the time-to-sue provision.  Relevant to this assertion, Plaintiff alleges that Defendant provided coverage for her claim well past the one-year time-to-sue provision had run and assured her it would continue to provide coverage despite extensive delays in repair.  *See* (Doc. 1-1) at ¶7 ("Over the next several months, Defendant processed Plaintiff's claim and investigated the loss."); ¶10 ("Defendant assured Plaintiff that remediation

9

of water damage in the second story bathroom, including replacing the tub in the bathroom, would be covered by Plaintiff's home insurance policy.") and ¶12 ("Defendant assured Plaintiff that, no matter how long it took for Paul Davis Restoration and the contractor to do the work, Plaintiff's homeowner's policy would provide coverage.").  Indeed, it was not until 2022 that Plaintiff alleges Defendant denied coverage.  *See id.* at ¶17 ("Defendant, by letter dated June 23, 2022, this time denied coverage on the basis that too much time had elapsed from the date of loss to the request for alternative housing coverage.") and ¶26 ("By letter dated December 2, 2022, Defendant denied coverage for certain expenses Plaintiff had submitted and indicated that it would not be paying for any further expenses incurred in the course of remediating and repairing the water damage caused by the 2020 storm.").

Defendant relies on the New Mexico Supreme Court's decision in *Green* where the court found that the insurer did not waive a one-year time-to-sue provision for one of the insured's claims because it informed the insured within 90 days of the date of loss that it was prepared to offer a certain sum and no more.  *See* 746 P.2d at 155.  The court reasoned that by informing the insured of the amount it was willing to pay and not engaging in further investigation or discussion, "[n]othing thereafter on the part of General Accident could have induced Green to reasonably believe that the September 17 loss was going to be settled to his satisfaction without suit." *Id.*  Here, however, Plaintiff does not allege that Defendant indicated it would stop paying on the claim during the year after the date of loss.  Instead, Plaintiff alleges that Defendant continued to provide coverage for at least two years and only informed Plaintiff that it would stop paying in 2022.  *See* (Doc. 1-1) at ¶¶17, 26.  Accordingly, the holding in *Green* does not support Defendant's contention that it can rely on the time-to-sue provision.

Based on the foregoing, the Court finds Plaintiff has sufficiently alleged that Defendant is estopped from relying on the time-to-sue provision because, as Plaintiff states, "it was simply *impossible* for Plaintiff to know within a year of the date of loss that suit would be necessary against Defendant to enforce the terms of the contract."  (Doc. 12) at 4; *see also Green*, 746 P.2d at 155 (holding that "waiver of a time-to-sue provision may be accomplished by slight acts and circumstances," and "[a]n insurer should not be allowed to induce an insured's participation in an investigation past the twelve month time-to-sue provision and then rely on that contractual provision to bar claimant's recovery") (citation omitted); *see also Lucero v. Travelers Commercial Ins. Co.*, 647 F.Supp.3d 1115, 1123 (D.N.M. 2022) (explaining that if Travelers had "waited until a few months after expiration of the contractual limitations period to deny Mr. Lucero's claim, Travelers would be estopped from asserting its time-to-sue defense").  Applying New Mexico's six-year statute of limitation for Plaintiff's breach of contract claim, and considering it began to accrue from the date of denial of her claim in 2022, Plaintiff's claim is not untimely.  Therefore, the Court denies Defendant's Motion to Dismiss as to Plaintiff's breach of contract claim.

**B.  Bad Faith, Unfair Insurance Practices Act, and Unfair Trade Practices Act Claims**

Defendant next moves to dismiss Plaintiff's claims for bad faith and violation of the New Mexico Unfair Insurance Practices Act and New Mexico Unfair Trade Practices Act.  Since the Court has not dismissed Plaintiff's breach of contract claim, the Court rejects Defendant's argument that these claims should be dismissed because they are predicated on an untimely breach of contract claim.  *See* (Doc. 3) at 7-8.  Defendant also contends that Plaintiff fails to

sufficiently allege the elements for each of these claims. *Id.* at 8-10. Plaintiff responds that she adequately pled her bad faith and statutory claims by claiming Defendant unreasonably failed to provide coverage, interfered with her relationship with a contractor, and misled Plaintiff regarding its willingness to continue to provide coverage. (Doc. 12) at 6-7. Plaintiff further claims that Defendant did not attempt in good faith to settle Plaintiff's claims, failed to promptly explain denial of her claims, and denied her claims on spurious grounds. *Id.* at 8.

### 1. Bad Faith Claim

"Under New Mexico law, an insurer who fails to pay a first-party claim has acted in bad faith where its reasons for denying or delaying payment of the claim are frivolous or unfounded." *See Sloan v. State Farm Mut. Auto. Ins. Co.*, 85 P.3d 230, 236 (N.M. 2004). The terms "frivolous or unfounded" in this context "does not mean erroneous or incorrect," rather, they mean "an arbitrary or baseless refusal to pay, lacking any support in the wording of the insurance policy or the circumstances surrounding the claim." *Id.* at 237 (quoting *Jackson Nat'l Life Ins. Co. v. Receconi*, 827 P.2d 118, 134 (N.M. 1992)) (internal quotations omitted). Therefore, an insurer may deny coverage "without exposure to a claim of bad faith failure to pay as long as it has reasonable grounds for the denial." *Haygood v. United Servs. Auto. Ass'n*, 453 P.3d 1235, 1241 (N.M. Ct. App. 2019). Generally, reasonable grounds will follow from a "reasonable investigation," but where an insurer fails to make an "adequate investigation," it may be liable for a bad faith denial of a claim. *Id.*

Here, Plaintiff alleges that Defendant's investigation of the initial leak "was incomplete and did not, for example, include a determination of the path the water that had damaged Plaintiff's home had taken in causing that damage." (Doc. 1-1) at ¶7. She also alleges

Defendant denied her January 13, 2023 claim "on the basis that the damage had been caused by seepage … despite the fact that the declarations page of Plaintiff's policy indicated that it *did* provide coverage for seepage and reimbursement for alternative living arrangements up to the actual cost of such arrangements without temporal limitation." *Id.* at ¶25.  In addition, she states that Defendant asserted in a December 2, 2022 letter "that the damage claimed in 2020 was the same damage for which coverage had been denied in 2019.  In fact, it was not." *Id.* at ¶26. Taking as true these allegations that Defendant did not have reasonable grounds to deny Plaintiff's claims and did not conduct an adequate investigation, Plaintiff has sufficiently stated a bad faith claim.  *See Khalik*, 671 F.3d at 1190 ("[A] complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face.").  The Court therefore denies the Motion to Dismiss as to Plaintiff's bad faith claim.

### 2.  Unfair Insurance Practices Act Claim

The New Mexico Unfair Insurance Practices Act ("NMUIPA") prohibits an insurer to engage in certain practices with respect to claims, either knowingly or "performed with such frequency as to indicate a general business practice."  *See* NMSA § 59A-16-20.  Here, Plaintiff appears to allege that Defendant violated the following provisions of the NMUIPA:

> (A) Misrepresenting to insureds pertinent facts or policy provisions relating to coverages at issue;
> (B) Failing to acknowledge and act reasonably promptly upon communications with respect to claims from insureds arising under policies;
> (C) Failing to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims arising under policies;
> (D) Failing to affirm or deny coverage of claims of insureds within a reasonable time after proof of loss requirements under the policy have been completed and submitted by the insured;

(E) Not attempting in good faith to effectuate prompt, fair and
equitable settlements of an insured's claims in which liability
has become reasonably clear; and

(N) Failing to promptly provide an insured a reasonable
explanation of the basis relied on in the policy in relation to the
facts or applicable law for denial of a claim or for the offer of a
compromise settlement.

*See* (Doc. 1-1) at ¶¶33-38.  Plaintiff recites the statutory language of NMSA § 59A-16-20(A-E,

N) but does not include facts supporting the alleged unfair practices.  While Plaintiff states in her

response brief that paragraphs 12, 13, 15, 17, 19 and 23-26 support this claim (Doc. 12 at 8), it is

not clear which facts correspond with each statutory section.  Moreover, Plaintiff does not allege

that Defendant engaged in any of these acts knowingly or "with such frequency as to indicate a

general business practice."  NMSA § 59A-16-20.  The absence of factual allegations to support

the cited statutory provisions, and Plaintiff's mere "formulaic recitation of the elements of a

cause of action," warrants dismissal of this claim.  *See Twombly*, 550 U.S. at 555; *see also*

*Albuquerque Ambulatory Eye Surgery Ctr. LLC v. Transportation Ins. Co.*, 566 F. Supp. 3d

1178, 1197 (D.N.M. 2021) (dismissing the plaintiff's NMUIPA claim for failure to allege facts

regarding any of the alleged unfair practices or to allege the complained-of acts occurred "with

such frequency as to indicate a general business practice").  The Court grants the Motion to

Dismiss as to Plaintiff's Unfair Insurance Practices Act.  The dismissal will be without prejudice

because Plaintiff may be able to amend her Complaint to add facts necessary to support this

claim.  *See Boateng v. Metz*, 410 F. Supp. 3d 1180, 1191 (D. Colo. 2019) (dismissing claim

without prejudice "because Plaintiff may be able to amend his Complaint to add the facts

necessary to support this claim").

### 3.  New Mexico Unfair Practices Act

Under the New Mexico Unfair Practices Act ("NMUPA"), "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce are unlawful."  *See* NMSA § 57-12-3.  To state a claim under the NMUPA, a plaintiff must allege that "(1) defendant made an oral or written statement that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale of goods or services; (3) the conduct complained of occurred in the regular course of defendant's business; and (4) the representation may, tends to, or does deceive or mislead any person."  *Mulford v. Altria Grp., Inc.*, 242 F.R.D. 615, 621 (D.N.M. 2007); *Lohman v. Daimler-Chrysler Corp.*, 166 P.3d 1091, 1093 (N.M. Ct. App. 2007).

Plaintiff claims that Defendant violated § 57-12-2(D)(17) of the NMUPA by "failing to provide the quality or quantity of services Plaintiff paid for when purchasing her homeowner's policy," and explains in her response to the Motion to Dismiss that paragraphs 10, 12, 15, 17, 20, 23, and 24-26 of the Complaint are the factual allegations supporting that claim.  (Doc. 1-1) at ¶37; (Doc. 12) at 8.  Those paragraphs allege: Defendant assured Plaintiff that remediation of the water damage in the second story bathroom would be covered by the insurance policy (¶10); Defendant assured Plaintiff that the policy would provide coverage "no matter how long it took for Paul Davis Restoration and the contractor to do the work" (¶12); Paul Davis Restoration refused to complete the work it had begun in the summer or 2021 after one if its representatives spoke with Defendant (¶15); on June 23, 2022, Defendant denied coverage for alternative living arrangements because too much time had elapsed from the date of loss, despite the insurance contract providing coverage for alternative living arrangements "without temporal limitation"

(¶¶17, 23, 25); Defendant's adjuster represented to Plaintiff that Paul Davis Restoration told

Defendant "there was no such damage," but Paul Davis Restoration denied making any such

statement to Defendant (¶20); and Defendant improperly denied Plaintiff's June 13, 2020 and

January 13, 2023 water damage claims by incorrectly stating Plaintiff's policy does not cover

damage caused by seepage and that the damage claimed in 2020 was the same damage for which

coverage had been denied in 2019 (¶¶24-26).

Accordingly, Plaintiff's Complaint alleges that Defendant made specific oral and written

statements that are false or misleading.  Defendant argues that this claim is "comprised of mere

conclusory statements and threadbare recitals of elements of various causes of action."  (Doc. 15)

at 7.  The Court disagrees.  While a better practice would have been for Plaintiff to state in her

Complaint which facts support her NMUPA claim, the Complaint nevertheless contains adequate

factual support for this claim to survive a motion to dismiss.  Unlike Plaintiff's NMUIPA claim,

where it is not clear which facts support each of the various provisions Plaintiff recites, here

Plaintiff makes sufficiently specific factual allegations that Defendant made false or misleading

statements about her insurance coverage.  *See, e.g., Palmer v. State Farm Mut. Auto. Ins. Co.*,

584 F. Supp. 3d 1018, 1030 (D.N.M. 2022) (denying motion to dismiss plaintiffs' NMUPA

claims where they "adequately pled that Defendants misrepresented their underinsured motorist

coverage" by failing to provide policies "containing sufficient information to properly inform a

reasonably prudent person purchasing underinsured insurance" and the insureds "were under

reasonable belief that such coverage existed and would protect them").  Plaintiff therefore

sufficiently states a claim under the NMUPA and the Court denies the Motion to Dismiss as to

this claim.

**IV.**     <u>**Conclusion**</u>

Based on the foregoing, the Court grants Defendant's Motion to Dismiss, (Doc. 3), in part and denies it in part.  The Motion to Dismiss is denied as to Plaintiff's First Cause of Action – Bad Faith Breach of Contract, and Third Cause of Action - Violation of the New Mexico Unfair Trade Practices Act.  The Motion to Dismiss is granted as to Plaintiff's Second Cause of Action - Violation of the New Mexico Unfair Insurance Practices Act, and that claim is dismissed without prejudice.  Plaintiff may file a motion to amend her Complaint as to this dismissed claim **no later than April 22, 2024**.

IT IS SO ORDERED.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent