IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CAROLYN DECHAINE,

    Plaintiff,

v.                                                         Case No. 1:23-cv-01134-KRS-LF

LIBERTY MUTUAL INSURANCE COMPANY,

    Defendant.

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR REMOTE INSPECTION**

      This matter comes before the Court on Plaintiff's Motion for Remote Inspection, filed May 9, 2025. Doc. 68. The case at issue involves insurance coverage for storm damage to the interior of Ms. Dechaine's home. Doc. 55 at 1–2. As part of the discovery process, "the parties have been attempting to schedule and complete an inspection of Plaintiff's home since the fall of last year." Doc. 68 at 1. Having reviewed the parties' submissions and discussed the matter at a status conference on May 14, 2025 (Doc. 69), the Court denies the motion for the reasons outlined below.

**PROCEDURAL BACKGROUND**

      The original scheduling order in this case, filed on May 23, 2024, bifurcated discovery into Phase I (contractual claims) and Phase II (extracontractual claims). Doc. 26 at 2; *see also* Doc. 22 at 5 (describing phases of discovery). It set the close of Phase I of discovery on November 1, 2024, and the close of Phase II discovery on January 31, 2025. Doc. 26 at 2. A series of motions to extend followed, related not only to the discovery deadlines but also to a settlement conference and its attendant deadlines. Docs. 33, 35, 37, 44, 47, 49. It became clear

that the difficulty lay in scheduling the inspection of Ms. Dechaine's home. Docs. 37, 42, 44, 47, 49.

Now, nearly a year after the date the original scheduling order was filed, Ms. Dechaine moves to conduct the inspection of her home remotely. Doc. 68. She outlines her health conditions: she is severely immunocompromised and "suffers from long COVID" and "Myalgic Encephalomyelitis/Chronic Fatigue Syndrome ("ME/CFS"), a condition characterized by fatigue and flu-like symptoms experienced after physical or mental activity." Doc. 68 at 1–2. She provides two of her own affidavits (Docs. 68-1 and 71) and one letter from her primary care physician (Doc. 71-1) expressing significant limitations in her immune system and energy levels. She represents that if the motion were granted, "Ms. Dechaine would, at the inspector's discretion, display through video conferencing those portions of the home the inspector wants to see." Doc. 68 at 3.

Defendant argues that because Ms. Dechaine's claims are based on the alleged extensive water damage to the interior of her home, it is imperative that it be permitted to inspect the interior of the home. Doc. 72 at 1, 3. Further, the parties agree that Defendant has been accommodating and reasonable in its requests for a home inspection, and the delay in obtaining a home inspection is attributable solely to Ms. Dechaine. *See id.* at 2–3; Doc. 69 at 1. Defendant first requested the inspection nearly a year ago, on July 1, 2024, and followed up multiple times. Doc. 72 at 2. Ms. Dechaine finally agreed that an inspection could take place on September 27, 2024, but then delayed it further because of shipping issues related to the COVID test kit. *Id.* When Ms. Dechaine refused to allow the bearded inspector to enter her home on October 11, 2024, due to concerns about the mask forming an adequate seal on his face, Defendant hired a new inspector—a woman—who does not have any facial hair. *Id.* By then, Ms. Dechaine said no

2

inspection could take place until the weather warmed up. *Id.* at 2–3. Ms. Dechaine finally agreed to June 27, 2025, for the inspection, but now moves for the inspection to take place remotely. *Id.* at 3. Defendant remains willing to comply with reasonable safety precautions, including a requirement that only one person enter the home, and that the inspector wear a mask and test for COVID before entering the home. *See id.* at 5. But Defendant contends that Ms. Dechaine's health "concerns are insufficient to outweigh 'the ordinary presumption in favor of broad disclosures.'" *Id.* at 3. The Court agrees.

## ANALYSIS

Under the Federal Rules of Civil Procedure, the scope of discovery includes

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

FED. R. CIV. P. 26(b)(1). Here, an in-person inspection of the inside of the house to assess the damage Ms. Dechaine alleges plainly is nonprivileged and relevant to her claim. Ms. Dechaine's amended complaint alleges a breach of contract for failure to provide coverage for the storm damage, a violation of the Unfair Insurance Practices Act based on Defendant's representations and actions pertaining to its handling of the claim, and a violation of the Unfair Trade Practices Act for failure to provide the services Ms. Dechaine purchased in her homeowner's policy—that is, essentially, failure to cover the storm damage. Doc. 55. Central to each of these claims is the extent of damage itself—particularly the water damage to the interior of Ms. Dechaine's home— which Defendant is entitled to assess through its own inspection.

Ms. Dechaine's arguments raise, indirectly, the issue of proportionality. She outlines the burdens she will face, namely a risk of infection (to which she is particularly vulnerable) and

post-exertional malaise (flu-like symptoms and exhaustion, which she is likely to suffer if she exceeds her capacity for exertion). Doc. 68 at 2. Certainly, the risk of physical harm, illness, and high levels of exhaustion are not to be taken lightly, and the Court recognizes that the burden an inspection places on Ms. Dechaine is higher than it would be on someone without her conditions.

      At the same time, the Court must consider the importance of the issue of damage to Ms. Dechaine's house to this litigation, which is paramount. The parties' relative access to relevant information is highly asymmetrical: Ms. Dechaine has access to her home and photographs of the damage, and she has hired her own inspectors to examine the interior of the house during a time when, she alleges, she had more strength than she does now—generating evidence that opposing counsel cannot corroborate or dispute with its own in-person inspection. *See* Doc. 71 at 2. In contrast, Defendant does not have access to Ms. Dechaine's home without her permission, and its ability to gather information via video call and photographs is limited. *See* Doc. 69 at 2 (clerk's minutes from May 14, 2025, status conference noting that defense counsel "believes that an in-person inspection is necessary because sometimes important details that can be seen in person cannot be seen in a photo or video").

      Further, the accommodations to which Defendant has agreed will ameliorate some of the burden on Ms. Dechaine. Defense counsel represents that only one inspector will enter the home, that the inspection is expected to last only sixty to ninety minutes, that the inspector will wear a face mask and will have no facial hair to ensure that the mask can form an adequate seal, and that the inspector will conduct the investigation "after receiving a negative COVID test result from a test kit purchased and approved by Plaintiff." Doc. 72 at 5; Doc. 69 at 2. Ms. Dechaine represents that even these accommodations are insufficient. Doc. 71 at 3. However, in light of the centrality of this inspection to the litigation and the asymmetry of access to information

4

regarding the condition of Ms. Dechaine's house, the Court finds that an in-person inspection is necessary.

Finally, the Court is skeptical of Ms. Dechaine's claims that any type of in-person inspection puts her health at grave risk. Her amended complaint outlines in detail the various contractors who were in her home between June 13, 2020, and March 2023 to inspect and repair the extensive damage she claims is covered by her homeowner's insurance with Defendant. *See* Doc. 55. There is no evidence that the presence of any of these contractors in Ms. Dechaine's home caused any harm to Ms. Dechaine's health. As the Court pointed out at the hearing on May 14, 2025, the amended complaint conflicted with Ms. Dechaine's statement in her affidavit that "[f]or the last five years, the only person who has been inside of my home other than me is my mother." *See* Doc. 68-1 at 3 ¶ 6. Two days after that hearing, Ms. Dechaine filed a second affidavit explaining that she was "insufficiently specific," and that "[m]y mother is the only person who has been in my home with me, at the same time, in the portion of the house I am using." Doc. 71 at 1 ¶ 3. She further explained that the contractors who worked in her home wore masks and worked in an area where she was not living, and that the area was sealed off from where she was living. *See id.* at 2 ¶ 4. The inspector here will not be in Ms. Dechaine's house while Ms. Dechaine is in it. The inspector will take reasonable precautions, including taking a COVID test supplied by Ms. Dechaine, and can wear whatever protective clothing and/or masks Ms. Dechaine provides as long as these items do not impede the inspector's ability to assess damage to the house. The inspector can document where she goes in the house and may be able to avoid particular areas if they are not relevant to Ms. Dechaine's claim. The inspection is expected to last no longer than 90 minutes. Ms. Dechaine can open all her windows and vacate

5

her house while the sole inspector is in it. An in-person inspection under these circumstances falls squarely within the parameters of Rule 26(b)(1) and will be permitted.

## CONCLUSION

For the above reasons, the Court DENIES Ms. Dechaine's Motion for Remote Inspection (Doc. 68). Ms. Dechaine is ordered to permit an in-person inspection of her home with reasonable safety precautions as outlined in this order on or before June 27, 2025. It is so ordered.

_____
LAURA FASHING
UNITED STATES MAGISTRATE JUDGE